Madam Clerk, please call the first case. Good morning, your honors. My name is Gilbert Lenz from the state of Philip Defender. I'm representing defendant Craig Hyland. Good morning, your honors. Assistant State Attorney John Walters representing the people of the state of Illinois. Good morning, gentlemen. Counsel, you may proceed. Thank you, your honor. Good morning. It may please the court. My name is Gilbert Lenz and I'm representing defendant Craig Hyland in this case. With the permission of the court, I'd like to discuss two issues that were raised in the briefs. The first issue wherein we request a reversal of Mr. Hyland's conviction because the state failed to prove its burden to show probable cause at the suppression hearing. And issue number four wherein we allege that counsel was ineffective for failing to prevent this trial, which should have been a credibility contest on a gun possession charge from devolving into a trial about gang evidence, which included the testimony that allowed the jury to infer that Mr. Hyland had previously gotten away with murder. On the first issue, your honors, the US Supreme Court has made it clear that while an officer may rely on information he receives from another officer to make an arrest, when it comes time to prove that there was probable cause for that arrest in court, the state must present someone with firsthand knowledge of facts supporting the original information. That would usually be the officer who wrote what in this case was the investigative alert. Here, the state presented the arresting officer and another officer at the suppression hearing who testified that they believed they had probable cause to arrest Mr. Hyland because they had read an investigative alert saying there was probable cause. They made an arrest, did a custodial search, and testified that they found the weapon. The state never presented the author of the original investigative alert, an unknown officer who wrote the alert at an unidentified time. We don't know anything about that investigative alert or the facts underneath it. The state manifestly failed to meet its burden here. The trial court, however, found that the wrong. This court, based on the Whiteley rule and as interpreted by this court in Lawson and other cases, should reverse Mr. Hyland's conviction. Assuming that's true and the state failed to meet its burden, what about the state's argument as it relates to Terry? Well, Your Honor, my response to that is fourfold. First, this was in no way a Terry encounter. The officers themselves said that they believed they had probable cause and they acted in the belief of probable cause. They immediately arrested and testified to this. They arrested Hyland, they cuffed him, and they searched him. They did a, quote, custodial search. There was no doubt as to what the officers testified to. I would contrast that with this court's recent decision in Wells, wherein under similar facts the state was required to show probable cause to justify the search. During the hearing on the motion to suppress and at the trial, did the state argue that it was a Terry stop? No, there was no mention of the Terry stop below, and that leads me to my second argument, Your Honor. The state has forfeited the Terry argument. The Illinois Supreme Court, in a case called Adams, we have two Adams cases here, the first Adams case, said that under, again, under similar circumstances, even where the state prevails in the trial court on a motion to suppress, where they hadn't argued Terry in the trial court, the Supreme Court refused to hear the merits of the state's Terry argument. And under that Adams case, the state has forfeited the Terry issue in this case. There are two other responses I would make on the Terry argument. First is there was no reasonable suspicion for a stop. Reasonable suspicion requires a reasonable belief that the defendant was, is, or was about to commit a crime. The state cannot rely on the investigative alert for the same reason they can't rely on the investigative alert for probable cause, because they didn't offer any of the underlying facts. And what the police saw when they showed up was mere flight, and as we know, mere flight does not support a reasonable suspicion. Did the state argue that there was something in addition to mere flight? They argued that, they argued that, you know, that the shop that Mr. Highland and Mr. Montgomery ran into were, was an unlicensed shop. They did argue that it was a high crime area. They argue now that it was a high crime area. There's no evidence in the record that this was a high crime area. And even so, under, under, again, under similar facts, this court has recently held that you have to have probable cause to justify the conduct that we see here. That's a Johnson case, for example, where police made a traffic stop, the passenger got out and ran, and the officer stopped him, cuffed him, and did what, uh, did what he had to do. He, like, swept his hand across the waistband and found a gun. This court found that even under all those facts, it still required a probable cause to, to conduct that search, and there was no probable cause for that individual. What about the state's argument as it relates to forfeiture? Well, Your Honor, um, this case, this claim is, is not forfeited, and you can, and the record indicates that. The trial court's handling of that, of this motion indicates that. The court relied specifically on the investigative alert to say there was probable cause. The court stated that what she heard about the investigative alert was sufficient to establish probable cause. And you can see that she felt what she heard was sufficient by the way she handled Mr. Montgomery as a co-defendant's motion to suppress. She ultimately granted Mr. Montgomery's motion to suppress, and the only factual difference between the two cases was that Mr. Highland had the investigative alert. She found what she heard about the investigative alert to be sufficient. The law says she was wrong about that, and this court should simply reverse on the merits. If there are no further questions about Issue 1, I'd like to move on to Issue 4, wherein counsel completely failed to protect his client from allowing this court, this case to become a trial about gang evidence. Before trial, the state charged Mr. Highland with nine counts of illegally possessing the gun. After the motion to suppress was denied, and immediately before the jury trial, the state dropped all but two of those charges. The most serious charge, the UUW felon charge, which will now be the only charge on the minimus, and one other charge, unlawful possession by a gang member. We're not saying the state wasn't allowed to prove up that charge. They are allowed to present evidence of gang membership as required by the statute, but the prejudice of counsel's failure to file a motion to sever is manifest in this record. Nearly half the state's case in chief was testimony, was gang evidence, and it was the most dramatic testimony. Officer Sledge, qualified gang expert, state called him down into the well of the court in front of the jury, had him go through photo after photo of Mr. Highland's tattoos, talking about what they mean and what faction he belongs to. All leading up to the prosecutor publishing People's Exhibit 3 to the jury, as Officer Sledge explained what it means, the two teardrop tattoos. Officer Sledge said, if they're not filled in, it means one of Mr. Highland's gang members, fellow gang members was killed, and if they're filled in, it means he was the individual who did retribution for that killing. In other words, with the ambiguity of the photograph and never clearing up whether the tattoos were filled in or not, the jury was allowed to infer that Mr. Highland had gotten away with murder. There's no more prejudicial evidence than that, particularly in what should have been a straight-up credibility contest between the three officers and the two defense witnesses about whether Mr. Highland illegally possessed the gun. It's hard to imagine more prejudicial evidence than that. And on top of that, the state fully exploited that evidence in closing argument. They not only argued that they had proven the gang member element, they argued that Mr. Highland was less credible because he was a proud gang member, because gang members do things in barbershops. And, I would just add, on top of that, they argued that the police officers were more credible merely because they were police officers, which the Illinois Supreme Court has recently declared to be improper in the other Adams case cited. Every step of the way, counsel failed to ensure Mr. Highland's right to a fair trial and failed to prevent this case from devolving into a trial about gang evidence when it should have been a straight-up credibility contest. He should have filed a motion to sever. He should have objected to all of this prejudicial gang evidence, particularly about the alleged uncharged murder. He should have filed a motion to strike, a motion for mistrial, something. Instead, we have what we see here. And for that reason, if you do not reverse pursuant to Argument 1, we request that you grant Mr. Highland a new trial based on counsel's manifest ineffectiveness. If there are no further questions, I'll save a few moments for rebuttal. Thank you. May it please the Court. With respect to the first issue, it's really important right off the bat to get... Defendant keeps saying that we have a burden, and that is absolutely incorrect under the law. And I want to go through the law today, because the law, if you just apply the law in this case, I submit that you will be affirming defendant's conviction in this case. The law in this case is that the ultimate burden of proving the illegality of the arrest always stays with the defendant. That comes from... I'm sorry? It was a warrantless arrest. Is that correct? It was a warrantless arrest. It does not change the fact that the ultimate burden of proving illegality of the arrest always stays on the defendant. That comes from an Illinois Supreme Court case, People v. Gibson. It's a 2003 case the defendant himself cited in his reply brief. So I want to make that very clear. There is a burden of production that shifts after the defendant establishes his prima facie case that there's a warrantless arrest. I agree with you that there's a burden of production that shifts, not the ultimate burden of persuasion. People v. Gibson lays that out extremely clearly. In pursuance of that burden to produce, what did the state produce? Well, Your Honor, since the defendant forfeited his challenge, never contested the basis for the investigative alert in this case, the people simply put forward that there was an investigative alert for this defendant. They established that upon arriving at the scene, the defendant looked along with the co-defendant... Yes, absolutely. But he raised the issue in the trial court both during the hearing, by virtue of the hearing, and he raised it in post-trial motions. The fact that he advances a different theory is another issue. With due respect, Your Honor, and again, I'm going to really harp on the law today, there's a binding case on all fours with this issue. It's called People v. King. I cited it in my brief. It's exactly the same case. The defendant litigated a pretrial motion to quash in that case, failed to challenge the basis underlying the stop order, just like the defendant did in this case, and the Supreme Court still found that the issue was forfeited. It didn't matter that he raised a pretrial motion to suppress. It didn't matter that he filed a post-trial motion. He had to raise this particular substantive issue, failed to do it under People v. King. This court is bound by Illinois Supreme Court precedent. I submit the defendant fully forfeited this issue under a case that's completely binding on this court. Explain, if you will, the practical application of this investigative alert. What does that dictate to law enforcement? What it means, for instance, in the Chicago Police Department case, they have a piece of paper or warrant. This is not a warrant in this particular case, but this investigative alert tells them that this defendant is wanted either for questioning or for arrest. There are different types of investigative alerts. This particular type of investigative alert was one for arrest. So the police officers, detectives, had entered into the system that this particular defendant was to be arrested in this case. The general order, I believe, suggests that there is an investigative alert with probable cause and an investigative alert without probable cause. Right. And this was one with. And you suggest that that means the subject should be arrested. It is. I think that's what you just said. Right. I would say that there was a lot more circumstances in this case that would justify the police action in this case. But I would not suggest to this court that in and of itself, in this particular case, just the mere fact that there was an investigative alert out for the defendant, in and of itself would not justify either a Terry stop or an arrest. But there's a lot more circumstances in this case, and that's what this court needs to look at. So the investigative alert with probable cause does not suggest that the person should be arrested? It does to the police officers, and they're acting under police regulation. Their fellow officers have indicated that a suspect needs to be arrested. So they're acting within the regulations of the Chicago Police Department. Is there any statutory provision for the issuance of an investigative alert? I'm trying to think beyond the general provisions regarding arrest under the Illinois Criminal Code. I'm not remembering anything that specifically governs investigative alerts.  Well, Defendant Bray's the Whiteley case, and I think we'll look at that in terms of this particular investigative alert. What separates this case from a case like Whiteley, in Whiteley the police, all they have to go on is something like an investigative alert or a police bulletin that somebody's wanted for arrest. That's the sum total of the evidence. They pick up the defendant. Nothing is ever introduced regarding probable cause underlying that investigative alert. And Whiteley says that under those conditions, probable cause hasn't been established. However, you want to follow up. What's the difference between an investigative alert and a warrant? Well, a warrant is signed by a judge or a magistrate. And authorized by the Constitution? Yes. Okay. So something more may be needed here to justify an arrest with an investigative alert, either evidence underlying it. And that's what happens when an investigative alert is issued and acted on, a person is taken into custody. Well, and precisely in this case, where the defendant himself acknowledged aspects underlying the investigative alert, on record page 154, the defendant is asked a straight-up question, what was the violation of the order of protection for? What was the order of protection for? Straight up, he answers, it was a domestic dispute. A few pages later, on page 157, he says, I told the guys in the barbershop that I didn't make that phone call to violate the order of protection. So the defendant himself, on this record, has acknowledged the existence of a domestic dispute underlying the investigative alert and an order of protection. The police were there pursuant to their follow-up of an investigative alert. Correct. The officers had pulled the warrants and investigative alerts for the day, and then they went out to search for these individuals. In this instance, at least one of the officers had prior dealings with the defendant. That's correct. In the situation where there's an investigative alert with probable cause, who makes the probable cause determination? I believe that that's a determination that's made by a detective or a police officer who decides whether they have sufficient information, either they're justifying arrest for this particular individual, or maybe they don't have sufficient information. So they're asking their fellow officers maybe to further investigate or bring the suspect in for questioning, but not to arrest. That's why there's a differentiation between an investigative alert with probable cause and one without. Well, the investigative alert with probable cause would cause any responding police officer to stop this person whenever and wherever located, take that person to the issuing investigative officer. Is that correct? That's correct, Your Honor. What does this sound like to you, where a person is taken off the street and taken to some police office? Well, depending on the circumstances, it can be an arrest. The investigative alert without probable cause, according to the training bulletin, suggests that the responding police officer advised the subject, you are the subject of an investigative alert, and you should voluntarily go to a police facility or the investigating police officer. Is that correct? It's an indication by the police that they themselves recognize they don't have sufficient evidence to justify an arrest in that particular case. So there's some further investigation that needs to take place. I don't know that they would necessarily mean that they should tip off the suspect that they're the subject of an investigation, but some further evidence has to take place before or has to be received before the police feel that they have sufficient probable cause to effectuate a warrantless arrest in that case. When an investigative alert, either with or without probable cause, is issued, what is the tenure of that alert? Is there an expiration to such an alert? Honestly, Your Honor, I don't recall. I did remember reviewing the specific order and the general order regarding investigative alerts, and I can't recall whether there's a shelf life on the investigative alert. Mr. Walters, here in Chicago, it is my belief or understanding that each detective area headquarters is in a building that houses at least two courtrooms. Would that be correct? It's certainly police area headquarters, area one, area two, et cetera. I believe there's usually a branch. Is there a reason why the investigating officer would not ask for a finding of probable cause by a detached magistrate? Again, I think it all depends on various circumstances. I think in certain circumstances where it's very cut and dry, the officers are not going to impinge. What's cut and dry? First of all, there's clear probable cause. The fact of going before a judge, getting a warrant, is not going to endanger another investigation. How about complying with the law? Would it do that? It would, but it wouldn't necessarily not comply with the law to effectually, I mean, warrantless arrests are permissible under the Constitution. Those are exceptions. They are exceptions, but I submit that exceptions are met in this particular case. Doesn't the Constitution indicate that a neutral and detached judge is supposed to make the decision about probable cause? Yes, Your Honor. In a case, in the normal course of it, let's put it this way, in the normal course of events, yes, but also there are a vast number of exceptions to the warrant requirement. The officers in this case didn't have time to go get a warrant? Your Honor, I don't know whether they did or didn't. Again, this is a case where the warrant was not, it wasn't fully litigated below, and that's not true. How long of this investigative alert was outstanding? We don't know that. There's a lot we don't know, but again, it goes back to the forfeiture issue. This issue wasn't litigated below. Had it been litigated below, we'd have a lot more facts to address some of the things that you're bringing up. It's not crucial that they go get a warrant. If they're armed with probable cause, then they proceed at their own peril. Let's take King out of the equation. Let's assume this wasn't forfeited, in your view, in the lower court. If the defendant in this case brings this motion, would you agree that it would then be incumbent upon the state to produce the officer who had personal knowledge of the underlying facts that gave rise to the investigative alert? Not unless the defendant is charged with framing the illegality, of raising the issue of illegality. In your scenario, if the defendant had done that, if he had raised in his written motion that he was attacking the basis for the investigative alert in this case, absolutely no doubt about it. But he does, in the sense that he says, I was arrested without probable cause. He calls the arresting officer, takes a stand. The arresting officer testifies as to why he arrested him, because I had an investigative alert. So isn't it the natural extension now that the state has to establish the basis for that probable cause? They're the acting agent here. Your Honor, I submit that under People v. King, it's very clear that that's not the case. And again, under People v. Gibson, it's not the case. Defendant has the burden here. Defendant waived by not raising this particular issue. Had defendant chosen to litigate this issue below, we would have responded in kind, and this issue would have been fully litigated. But how do you reconcile that position in light of Lawson? Your Honor, to be honest, I can't remember Lawson. Lawson, the state did not meet its burden of establishing that the officer issuing the bulletin on which Officer Griffin relied was possessed of facts sufficient to establish probable cause. I submit that probably in light of King and Lawson, that the issue was litigated in that particular setting. And because it was litigated. No, it wasn't, under Lawson. In Lawson, the defendant called the arresting officer and rested, and the state offered no evidence. And the court in Lawson said the state had an obligation, the state had a burden to advance the evidence to provide the personal knowledge of the underlying information that gave rise to the investigative alert, or in this case, in Lawson, the bulletin. But what, with respect, was the nature of the written motion for the motion to cause arrest in that case? I submit that it probably raised the issue, or at least challenged that particular issue. General allegation of lack of probable cause to effect an arrest. Well, Your Honor, I don't think we can get around King. I think what this court needs to do is address, because it's forfeited, whether there was ineffectiveness of the counsel for not litigating this issue on the part of defense counsel, and then looking at whether this met either prong or both prongs of the Strickland test in this particular case. And then that would be a way to examine at least some of these issues. And, you know, again, I'm not familiar with Lawson. I'm not sure if that's how they approached it in that particular case. Maybe it was plain error. Maybe the parties simply failed to raise the issue of forfeiture in that case. I mean, that's something that can happen. There is a burden on the prosecution to raise the issue of forfeiture. If it wasn't raised by the prosecution in that case, the Illinois Supreme Court has said that the state can waive the issue of forfeiture. So I submit that it sounds like that that's exactly the scenario that took place in Lawson. I'm not waiving forfeiture in this case. I'm adamantly asserting it, which means. On that issue of forfeiture, speak to defense counsel's argument that putting the issue of probable cause aside, let's assume you fail on that issue, that there was probable cause to arrest. Then you advance an argument that your position is supported by Terry. Argue in response to the defendant's argument that you've waived that. Well, first of all, there's a, again, I'm going to ask you to apply the law very carefully. Defendant misstated Adams to you. He just flat out misstated Adams. And I want to make this very clear. The people were not the prevailing party in Adams. They were the apple lot. And that made all the difference in the world. And there is a page number I want to direct you to, especially in Adams, if I can just find it. It's page 395 in the Adams decision. This is the Illinois Supreme Court. Again, remembering that the people were the apple lot. They had lost in the appellate court. They had failed to advance the argument that they were raising before the Illinois Supreme Court. They had failed to raise that in the appellate court. Not just in the appellate court. They failed to raise it in the trial court as well. And the Illinois Supreme Court said, before both the trial court and the appellate court, they had failed to raise this issue, number one. Number two, the first time that the prosecution raised the issue in that case was in their reply brief. And there was a motion to strike that issue from the reply brief. The Illinois Supreme Court took that with the case and decided in the defendant's favor because the prosecution waited until the reply brief to raise that issue. Moreover, in Adams, the court said there was another case that was instructive, and that case was called O'Neill. Well, guess what? In O'Neill, the people were the apple lot before the Illinois Supreme Court, not the appellee. They weren't the prevailing party below. In contrast, I cited to you three Illinois Supreme Court cases. Their names are Janus, Foskey, and Keller. And in every one of those cases, the Supreme Court made it very clear, abundantly clear, that where the prosecution is the prevailing party below, as we are, we are the appellee before you, where the prosecution is the prevailing party below, it does not waive arguments that it did not raise to further augment the trial court's ruling. Okay. So in the arguendo, that's the case. Then make your argument, if you will, as it applies to Terry. With respect, there's two prongs to Terry, essentially. There's whether there's a valid stop and whether there's a valid frisk. In this case, there's no question there was a valid stop. This case is, on all fours, the Wardlow case. This is a defendant who, unprovoked, looks in the direction of police officers and flees. And it's in a high-crime area. There's abundant testimony in this case. Where's the evidence? I'm sorry. I may have interrupted. Go on. You were about to talk about a high-crime area. Yes, Your Honor. Where in the record does it talk about a high-crime area? Well, if you look in the trial portion of the record, and you can do this under People v. Brooks, yet another Illinois Supreme Court case, you can look at the record of the trial itself to justify the trial court's ruling at the motion. At the trial itself, we had a police officer, Officer Sledge, who was a tactical officer. He testified based on his experience both as a Chicago police officer and as a sheriff's police officer, many years on the street, many years dealing with particular gangs. He identified the particular gang that was operating on this particular street, on 71st Street. He said it was the 70s Babies faction of the Gangster's Disciples, the GDs. Defendant is a member of that gang. Defendant had visible tattoos. He had the teardrop tattoos, which were established to be gang tattoos. He's on this corner. It's an area that is a high-crime area. Defense counsel himself concedes. That gets back to my question. Where in the record does it establish that this was a high-crime area? In Officer Sledge's testimony regarding the gang control nature of this particular block. In addition, defense counsel himself, at the motion to quash, conceded that this was a high-crime area. And on top of that, there had been a robbery that took place at this very establishment, whatever we're going to call it, whether it's an unlicensed barbershop, whatever the nature of this establishment is, there had been a robbery within the past few weeks at this particular place. So unlike the kind of cases the defendant cited to you, there is absolutely substantiated testimony by a police officer based on his experience with that neighborhood that this is a high-crime area. This is not the case. The defendant cited a case where a police officer just answered one question. He was given a loaded question, a loaded question about, well, is this a high-crime area? Yes. And nothing further was put into the record about establishing the officer's knowledge, his experience, et cetera. Officer Sledge's testimony in the trial goes way beyond anything that was in the case said by the defendant. So it only establishes it's a high-crime area. Go on. But in terms of establishing actual criminal activity, all we really have is the robbery that occurred some weeks prior. And we also have the attendant circumstances of this arrest, which are it occurred in broad daylight and there was no call of suspicious activity or suspicious individual or anyone acting strangely or in a manner consistent with criminal activity. They went there specifically with an intent to act on an investigative alert and arrest this individual, right? Partially, but there's more to it in this case than that. They arrive on the scene, yes, but then the defendant immediately looks in their direction and flees. And it's not just him. He's not by himself. He's with another individual. So what? So there's 10 of them that flee. That's irrelevant. Flight alone is, our court has long held, flight alone is insufficient. So what of it? Flight alone is insufficient, but, Your Honor, it does matter that there's more than one with them. The reason we have a RICO statute, the reason we have conspiracy statutes, is because we recognize when defendants group together and band together that they're more dangerous than a solo individual. All the cases the defendant cited you are a single individual fleeing from the scene. It's not what you have here. It is eminently more dangerous when there are multiple defendants in the case. They both flee in this case. They both run into this establishment, and they're both trapped. They can't get past the back door leading to a valley or whatever it is. And they're cornered. Now, under these circumstances, and there's additional circumstances in this, we have an investigative alert. What do we know about this investigative alert? We know the defendant himself has acknowledged that there's an order of protection against them, that there was a domestic dispute at the heart of that. This is after he's confronted, not before the officer's pursuing. The defendant certainly could not have conceded anything at that point. He had not even been confronted by the police. Well, the fact of the matter is, though, that whether it's before or after the fact, whether it came at trial or what not, what the defendant says after he's taken into custody has no bearing on this case. Right. Your Honor, in this particular case, though, where the claim is that the information underlined is the investigative alert. That's a chunk of this, the investigative alert. And where there's a question about the validity of that investigative alert, the fact that the defendant at trial acknowledges facts underlying that investigative alert is relevant and does go to the validity of that investigative alert. Now, I'm arguing here that there's a lot more to this case than just an investigative alert. There's a lot more to it than defendant supported, confirmed aspects of the investigative alert. The high crime nature of the area, the flight, and again, it's not simply flight in this case. Mr. Walters, during this past summer, there's been any number of publicized criminal acts along North Michigan Avenue in the Streeterville area. Is Streeterville, therefore, a high crime area? Your Honor, without somebody as some of these cases have laid out, without somebody coming in and testifying, providing a basis for it being a high crime area, I would say just the fact that a few incidents have taken place there, no. I heard in this testimony that there had been a report of a robbery at that barbershop where the defendant would have been the victim. Possibly. That's the only allegation of a criminal act that the record supports. Your Honor, with respect, that's not the case, because the police officer, Officer Sledge, testified that this particular block is controlled by the there's more to it than simply there was a robbery there. And as I said, defense counsel himself conceded that this was a high crime area. This wasn't an issue that was subject to litigation alone. This issue was removed from litigation. Let's concede that for our argument today, that let's concede it's a high crime area and there was a defendant plus one that engaged in a degree of flight. Is that alone now enough? Well, the flight plus the high crime area is more than sufficient to justify a stop under war law. Now we have to get to the frisk. That's what I want to get to. Right. And these are the factors that I was bringing up before. The fact that there's multiple defendants. The fact that they're cornered. They're trapped in a situation. They've already fled from the police. It indicates that they're not willing to cooperate with the police. I think it's helpful to look at Two suspects and four police officers. Well, police officers that are running through a door probably single file trying to get into this establishment. As did the defendants probably run through single file. Probably. Two suspects and four police officers. And remember, too, that this incident is a bang-bang incident. The whole incident is over in practically a minute, the officers testified, from the moments they see these individuals on the street to the point where they've frisked them and taken the defendants into custody and removed the weapon. Well, let's get to that. What gives the officer reasonable belief, reasonable suspicion, that these individuals or the defendant specifically is armed and dangerous so that his safety or the safety of others is at issue? It's these sort of factors that I'm describing to you. The fact that it's more than one. The fact that they immediately flee. The fact that they're trapped and cornered and now suddenly who knows what they're going to do under these particular circumstances. The fact that the defendant has a violation of an order of protection, an order of protection for a domestic dispute. The Illinois Supreme Court and the Illinois General Assembly have indicated that that is a very dangerous concern, that domestic disputes can eventually grow into murder and then be taken seriously. Wasn't he a predicate for this, a follower? According to the defendant. Again, because this issue wasn't litigated, we don't know. And that's a particular problem here because this particular issue wasn't litigated. He's a guy in cold weather with no coat on, so no indication by the officers that they observed any weapon or any bulge that would suggest there was a weapon. All there was was brief flight, a general allegation without the underlying facts to support the notion that this is a high crime area. And from that, we're to conclude that he had a reasonable suspicion that the defendant was armed and dangerous and that his safety or the safety of others was at stake. Again, it's more than that, though. There's multiple defendants. They're trapped. They're in a situation where it's highly dangerous. And it's all taking place very quickly. These are the sort of common-sense considerations that both the United States Supreme Court and the Illinois Supreme Court ask you to draw in terms of drawing the balance between upholding the Constitution and protecting officer safety. For the purpose of the record, can we agree that it were two suspects, not multiple? Two. Okay. Well, two is more than one. Okay. Well, I mean, since we know it was two. Two. Okay. There's two. No question. But there's more than one, and that's my point to you. In all the cases the defendant cited, I want to go through two of these cases. In the Thomas case, that's a completely different case, and that doesn't help elucidate this issue at all. In fact, it actually helps make my argument. In the Thomas case, the defendant was merely a passenger in a garden-variety traffic stop, and he fled. Well, and apparently it was a high-crime area. But that's it. A passenger in a traffic stop flees. Well, that certainly is suspicious, and the Thomas court said that justified a Wardlow stop, a Terry stop in that case. But that's all there was. There wasn't multiple defendants fleeing together. There were two defendants fleeing together. There weren't a situation where they became trapped and cornered, and the officers also had information that one of those two people had an order of protection against them for a domestic violence situation. So that's a completely different scenario. The Wells case, that's also a completely different case. In the Wells case, I'll just get my notes for one second. But the order of protection in this case, there was nothing to indicate that this defendant used any kind of weaponry as it relates to an apparent domestic issue, right? There's no indication from the record that the officers were possessed of such information. We just don't know. Right. We just don't know, again, because the issue wasn't litigated. In the Wells case, the police arrived on the scene twice, and the appellate court in Wells made a particular point of repeating that the defendant at all times was cooperative with the police. The defendant was fully cooperative, did not struggle, did not attempt to flee. Well, that's not this case. Neither of the cases the defendant cited, Wells or Thomas, really have anything to do with this case. I cited to you five factors that would support a Terry stop in this case, and I cited to you other cases like the Rice case where there was far less. There was simply a package being handed from one defendant to another, and that in and of itself was sufficient to justify both a stop and a frisk in that case. Actually, I think the stop was justified by there was a traffic violation, a speeding violation in the Rice case. That's what justified an initial stop of the car. But what justified the frisk in that case was the driver passed a package along to the co-defendant who stuffed it in his pants. That all by itself was sufficient. In the other case I cited to you, I think it's the Tobias case, there were just defendants walking down the street with apparently stolen property. That in and of itself was sufficient to justify not just a stop under Terry, but a frisk. I submit to you that the factors that I've put before you are more than sufficient in light of these cases, and especially in contrast to the kind of cases that defendants cited where somebody is merely present in a high-crime area, or where you have mere flight or something on that order. In fact, in the Wells case, there wasn't even flight. There was nothing that would put a reasonably prudent person in that position to justify a belief that he or people around him were in danger in those cases. In this case, it's a lot different. We have a defendant who's a member of a street gang, a particular street gang, that controls that area. He has a domestic violence order of protection against him. He's in an area that's known to be a high-crime area. He flees with another individual in concert. It's not simply he runs all by himself with four police officers chasing him. When we say domestic violence, that conjures up some thought and emotion. It really was an order of protection. We don't know, really they don't know either, what the full basis for that order of protection was, whether it was violence-related or not. Again, I hate to sound like a broken record. Well, I know. I know it wasn't developed. But the fact of the matter is there's nothing to conclude that the officers knew that this defendant had a history of violence or recent history of violence, apparently, right? There's no basis to conclude that. In the record, there's no basis. You know, it depends. You have to look at the fact that he's a gang member in a gang-controlled area. And in addition to that, he has this order of protection against him. The two things working together are a little bit different than either one of those things all by themselves. You know, in the Ward case I cited to you, there really wasn't much different evidence to go on, and that justified a reasonable suspicion in that case. In the Ward case, there was simply information that the Harvey police wanted a suspect for questioning, even less than in this case. There wasn't an indication that there was a probable cause investigative alert. There was even less in that case, just that he was wanted for questioning. That plus flight in the Ward case was sufficient to justify reasonable suspicion under Terry. And, again, under this case, in light of the authorities that I've cited to you, this is clearly a case governed by Terry. This is clearly a case where the need to protect police officers in this particular situation, especially a fast situation, fast-developing situation like this, the need to protect the police officers justifies the police action in this case. And I do want to make a quick point because I myself am in a little doubt about what the record states about the nature of handcuffing. Now, defendant cites to record pages J65 and 66. I looked over my notes of my abstract of the record. I don't see anywhere in there that the officer actually said that he handcuffed the suspect. That's what they allege. That's what they allege, but my recollection and my review of my notes didn't indicate that. So I'm just putting that before the court. I'm acknowledging I might be wrong in saying that they weren't handcuffed, but defendant is citing those particular pages in the record, so I think the answer can be easily established either way. Just to close out this issue, I would say that if Your Honors are in serious disagreement with me with respect to whether Terry justified based on the status of this record, then the appropriate remedy in this case, because these issues were developed, because this issue was forfeited, really the proper remedy is one that defendant cited to himself, a case called People v. Hill. And that's a very recent decision. It just came out in the last couple of months. Demetrius Hill, I think. In any event, that case said that the appropriate remedy is to send it back for competent counsel to represent the defendant at a new motion and for the issue to be fully and truly litigated. That's the appropriate remedy in this case. If you cannot see your way clear to finding with me that this court should be affirmed, that there was sufficient, at least Terry, and if not Terry, probable cause in this case, if you can't find your way to agree with me, then that is the appropriate remedy. Not to reverse this case on an issue that was never litigated below. That is extremely unjust. So you're agreeing that counsel is incompetent in this case? Is that what you're telling the court? I'm saying if you don't agree with me on the Terry bit of it, and you don't agree with me on the It's only if we don't agree with you. Or are you conceding counsel is incompetent? No, it's only if you don't agree with me, because if you were to agree with me with that, then the defendant can't possibly meet the second prong of Strickland. He can't show a reasonable probability of a different result. And therefore, you can argue the first prong whether or not counsel was competent for choosing the particular strategy that he chose or not. But if he can't establish the second prong, a reasonable probability of a different result, then there's no ineffective assistance of counsel here. There's only ineffective assistance of counsel if you disagree with me and you say there would have been or there's a reasonable probability of a different result in this case. Briefly with respect to the second issue that the defendant raised, I just want to point out that, first of all, there's a statute that particularly governs when multiple offenses are based on the same act. There's Illinois law that governs this. It's compulsory joinder. I regret that I didn't cite this particular statute in my brief. My opponent didn't either. But it is the governing law in this state. And that's Section 720 ILCS 5-3-3. Now, there is an out clause. To be fair to the defendant, there is an out clause for compulsory joinder, and that is if the interests of justice require a severance. Even though the offenses are both based on the same physical act. And, of course, there's no dispute before Your Honors that the two crimes in this case, the two offenses, are based on the same physical act. In fact, I conceded on the King issue on the unlawful possession of a weapon by a gang member because it's based on the same act of possession as the UUW by a felon in this case. I submit to Your Honors, though, that this case doesn't justify, again, doesn't justify a finding on either prong of Strickland in this case. I cited a number of cases to you where differing charges were married to each other, different incidents were married to each other in the same trial, many of them involving murders, which the defendant sort of alleges was possible in this case. He says, well, they could infer that. Well, there's a problem with the defendant's whole inference argument, and that is the exhibit in this case. If you look at the exhibit, the teardrop shows skin. It doesn't show that it's filled in. The defendant argued on page 41 of his brief that either one or both of the teardrops were filled in. Well, that's not true. It can certainly not be both because the second one is very obviously an open outline of a tear. It's not a filled-in tear. So to the extent the defendant said one or both, he misstated the facts of this case. It can't be both. So the only question then is whether this much smaller teardrop that's closer to the eye is filled in or not. Well, there's certainly no evidence to establish that it was filled in. No officer testified that it was. No one testified the defendant had retaliated or engaged in some other gang activity against shooting against rival gang members. None of that was in the record in this case. None of that was presented to the trier of fact in this case. So, therefore, a defendant cannot possibly establish an effective sense of counsel on that particular issue. And he briefly also touched on the Adams issue where the prosecution at the close of the case made one particular comment about police officers were to be believed, they wouldn't put their careers on the line in order to frame the defendant. Now, the state of the law at that particular time allowed for just that sort of argument. And that's probably why defense counsel didn't object at that point. So it's clearly waived. So the only issue then is whether it was ineffective sense of counsel not to raise an issue that up to that point was the law in this state. I recognize that Romney cited two strands of cases. Romney is a decision that came down 14 months after the trial in this case. So it's a rule that's established well after the fact of this trial. Really couldn't have been much help to the prosecutor and to the defense attorney trying this case. And certainly under ineffective sense of counsel, defense counsels aren't expected to be clairvoyant. But I just want to make sure that if you look at both of those cases, those two strands that are cited in Romney Adams, the important point to be made here is that the rule was that if the defense did not put on a defensive police frame, then that argument was absolutely improper. However, in the case where the defense did put on a defensive police frame, that was a proper argument. That was the rule up to that point. And that's what the cases cited in Romney Adams, the underlying cases that the Illinois Supreme Court cited in that case, that's what they said. With respect to your honors, the people of the state of Illinois respectfully request that this court affirm defendant's conviction in this case. Thank you. Your honors, just a couple of points on issue four and then I'll address issue one. The Adams case made it clear that the law, by collecting the cases, reversing on the kind of comments received from the prosecutor in closing argument here, that this was a law in Illinois and it is now. But that's only one thing that happened here, considering how the state exploited all of the gang evidence in closing argument. The Edwards-Bracey line of cases says that charges, even based on the same physical act, can and should be severed when the evidence as to one of those charges is so prejudicial that it infects the trial on the other charge. There's no question that the judge would have abused her discretion in this case had she been presented with a motion to sever, considering what the record shows happened at trial. And finally, on the teardrop tattoo, the state itself acknowledges that it's ambiguous whether, one, the top teardrop tattoo was filled in. So counsel allowed the jury to wonder whether Highland may have gotten away with a murder. That is complete ineffectiveness, and in what should have been a straight up credibility contest, Mr. Highland should get a new trial. There's many points to respond to on issue one. I think I addressed all of them in the reply brief. I just want to, and I'm happy to answer any questions on all the points the state made. However, I just want to start by saying that this case was, this claim was litigated in the trial court. It was a warrantless arrest. Mr. Highland filed a motion to suppress. Those two facts place a burden on the state to show that there was probable cause to arrest Mr. Highland. Where the officer relies on information from another officer, the state must present that other officer. Very straightforward. The state failed to do that here. Trial court found the evidence sufficient. Trial court was wrong. This court can and should reverse Mr. Highland's conviction. On the, going to whether there was reasonable suspicion to frisk Mr. Highland, the Wells case, I would point this court to the Wells as I did earlier and Johnson. In Wells, there was a report of domestic harassment with possible threats. Even in light of that, this court recently held that you had to have probable cause to cuff and search the defendant. My notes indicate and my brief indicates that Mr. Highland was cuffed before he was searched. I believe he was, and I apologize if I'm incorrect about that. However, there's no doubt the officers said here that they arrested and did a custodial search. That requires probable cause, and Wells indicates that. As far as the flight, the Johnson case is similar as well. Passenger gets out after a legitimate traffic stop, runs away in a high-crime area. The officer immediately stopped and did a custodial search, calling it a pat-down. This court found it was a custodial search, required probable cause, and reversed the conviction. This court should do the same. If there are no other questions, I ask this court to reverse Mr. Highland's conviction or grant him a new trial. Okay, thank you. Thank you both for well-paid effect. We'll stand and recess.